True *v.* Plumley.

(*) **TRUE &amp; ux. versus PLUMLEY.**

If, in a bill of exceptions, presented at *Nisi Prius*, for allowance, the Judge make wrongful alterations to the injury of the excepting party, a correction cannot be had by motion to the Court. It can be had by writ of mandamus only.

In the caption of a deposition, the magistrate's certificate, that the adverse party has been notified, is conclusive evidence that such notice had been given, and given in the season and mode prescribed by the statute; and no affidavit or testimony is admissible to controvert it.

In a civil suit, on an issue received and discussed by the jury on Saturday, their verdict may be affirmed and recorded on the next Court day, though it was finally agreed upon and sealed up on the morning of Sunday.

A jury, after sealing up their verdict and separating, cannot be sent back to reconsider it, except by consent of parties.

By pleading the general issue to the declaration, the defendant waives all benefit from a demurrer previously filed.

In a suit for slander, a count setting forth that the defendant had charged the plaintiff with the commission of a crime, *by its general designation*, is sustainable, though specially demurred to.

Under such a general count, the Court may, on motion, order a specification of the words, which the plaintiff proposes to prove.

From words, in themselves actionable, the law implies malice, and that some damage arises therefrom.

In addition to this *implication of malice*, a plaintiff may prove *express malice*, whereby to increase the amount to be recovered as damage.

For this purpose, he may prove that the defendant *after action brought*, repeated the slander. In such case, however, the repetition of the slander is not to be viewed as a substantive ground of recovery. It can go only to illustrate the motive of the former speaking, for which the action was brought.

In a subsequent suit for such repetition of the slander, it is no defence that the repetition was proved in the former suit, if it was so done for the sole purpose of showing malice in the original speaking.

To assert that A. B. "committed the crime, or he would not have done that other act," is a charge that A. B. committed the crime.

A charge that a married female is "a bad woman, and has dealings with other men besides her husband, and is not very particular with whom,"—does not amount to the charge that she "is a whore."

In slander, brought by a married female, one count was for charging upon her the crime of adultery, another for charging that she was a whore;— *Held,* that proof of the adultery would defeat a recovery upon the first count, and would mitigate, but not defeat, a recovery of damage upon the other.

In an action of slander, it is indispensable that the Judge present to the jury the rule of law by which their assessment of damage should be made.

In such an action, it is proper that the jury, in assessing the damage, should regard the *probable future* as well as the *actual past.*

On REPORT from *Nisi Prius,* HATHAWAY, J., presiding.

Action for defamatory words spoken of Mrs. True.

*Randall,* for the defendant, having read the exceptions, offered to read and to support by proofs a written motion for an amendment of the exceptions, on the ground that alterations made in them by the Judge, after they had been drawn up and filed by the counsel, present the case wrongfully, and do injustice to the defendant.

SHEPLEY, C. J. — "It is unnecessary to read the motion. The Court has no power to grant it. This has often been decided. A remedy in such a case can be had upon a writ of mandamus only.

The declaration contained three counts. The first and third are of the same import, alleging that the defendant spoke of the female plaintiff the slanderous words, "she is a whore." The second count alleged, that the defendant. charged her · with the crime of adultery. To the first and third counts the general issue was pleaded.

To the second count the defendant demurred specially, alleging for cause, that the " plaintiffs have not stated therein, as they ought, the words or other foundation upon which their allegation is predicated, by means whereof they artfully endeavor to prevent the defendant from making a just defence."

The demurrer was overruled, and the defendant then, (no objection being taken thereto,) pleaded the general issue to the second count, and also, by brief statement, justified the words therein sued for, as true.

The evidence in the case was all reported. It shows the facts stated in the opinion of the Court, and those stated and relied on in the argument of the defendant's counsel.

The plaintiffs offered the depositions of Timothy Fuller and six others, the captions to which were regular in form,

certifying that the adverse party was notified, and did not attend.

They were objected to by the defendant, who offered to prove, *that* he had been notified by the plaintiffs to attend the taking of the deposition of one Dorr, on the Saturday previous to the sitting of the Court, and that the magistrate having been employed to a late hour of Saturday evening, without having completed that deposition, adjourned the further proceedings therein to Monday morning at eight o'clock, at which time the defendant attended, and was engaged in that proceeding ; finding it essential to his rights to do so ; *that* the depositions now offered, were taken upon the same morning, upon a notice served upon the defendant at half past seven o'clock for his attendance upon such taking at the same half past seven o'clock ; and that, for that reason, he did not and could not attend, to put cross-interrogatories.

The depositions were further objected to because not taken until the day next before the sitting of the Court. They were, however, admitted.

For the purpose of showing *express* malice, the plaintiffs offered the depositions of Samuèl Whielden and Peter Whielden, showing that the defendant reiterated the slanderous words, but not showing whether such reiteration was before or after the bringing of this suit. These depositions were objected to, because the words they testified to, if spoken at all, might have been spoken subsequently to the bringing of this suit ; and might therefore be the foundation of another suit. They were, however, admitted.

The depositions of Richard Libbey and Jonas C. Spooner are specially adverted to in the Judge's charge to the jury, and commented upon in the opinion of the Court. The former shows, that the defendant said " Mrs. True is a bad woman, decidedly bad," to which the deponent answered, that he thought " Mr. B." had more regard to his own family than to take a bad woman there ; whereupon the defendant replied, " she is a damned whore, or she would not ride with J. B."

The deposition of Jonas C. Spooner states that " the de-

True *v.* Plumley.

fendant expressed himself strongly that she was a bad woman, that she had dealings with other men besides her husband, and was not very particular who."

The defendant introduced evidence tending to show that the reputation of Mrs. True was bad; also evidence tending to show that she had committed the act of adultery.

Other matters, urged by the defendant, so far as the decision of any legal question depended upon them, will sufficiently appear in the argument subjoined.

The Judge charged the jury *that* they should, in the first place, see if the evidence satisfied them, that the defendant had charged the female plaintiff with being a whore, as alleged in the declaration; *that,* if they believed the testimony of Richard Libbey and Jonas C. Spooner, the precise time when the words were spoken was immaterial; *that* it was sufficient to maintain the first and third counts; *that* the testimony of Peter Whielden and Samuel Whielden was admissible to show express malice; *that* the proof, if believed, is sufficient to sustain the first and third counts, and the words proved being actionable of themselves, the plaintiffs are entitled to recover, at all events, nominal damage; *that* the reputation of Mrs. True, if bad, would go in diminution of damage on said counts; *that* whether she had a good or a bad character, was for the jury to ascertain; *that,* if the defendant spoke of Mrs. True the words testified to, they should give her such damage as she was entitled to on the first and third counts; *that,* in regard to the second count, the defendant's plea, justifying the charge of adultery as true, is to be considered evidence, though not conclusive, that he had made the charge sued for in that count; *that,* if adultery was proved, it would go in mitigation of damage on the first and third counts, and defeat any recovery upon the second; *that,* as to damages, the jury might consider the pain and anguish, the cost and trouble, and the suffering occasioned by the slander; her prospects in life, as affected thereby; the wealth and disposition of the defendant, and his power therefrom to injure, and give such damage as she was entitled to.

The defendant's counsel handed to the Judge the following requests in writing : —

1. If the jury believe there was no damage to the plaintiffs, the verdict should be for the defendant.

2. If the jury believe that the defendant, in any thing he said, had no malice or intention to injure the plaintiffs, the verdict should be for the defendant.

3. That if the jury find the justification proved, which had been set up to the second count, the verdict should be for the defendant on all the counts.

The Judge said that, as to the first and third requests, he had already given the requisite instruction. He declined to give the second, and told the jury *that,* in order to maintain the suit, it was not necessary the defendant should have any malice against the plaintiffs, or intention to injure them ; *that,* if the defendant's malice was entirely towards another person, in slandering whom, he uttered the slanderous words against the plaintiff, the action was maintainable, and the damages should be just as great, as if the malice of the defendant had been towards the plaintiff; as if A threw a stone with malice, intending to kill B and killed C, against whom he had no malice, his guilt would be the same, as if he had killed B.

The counsel for the plaintiff verbally requested the Judge to instruct the jury, that the plaintiffs were entitled to recover for all future damages that might arise from the defendant's slanders. The Judge said to the jury, in reply, that he had already charged upon that point, and that they had very large discretion upon that question.

The case was submitted to the jury on Saturday evening, and they were directed to seal up their verdict and bring it in on Monday afternoon at the opening of the Court. On Monday afternoon, upon inquiry being addressed to the jury by the clerk, whether they had agreed, and before their answer, the counsel for the defendant requested the Judge to say to the jury that, if any of them wished to retire again to consider the case further, it was their right to do so. This the Judge declined to do. The counsel for the defendant

then requested the Judge to ask, or let them ask, the jury, if any of them wished again to retire to reconsider the case; and this request was renewed, after the reading and before the affirmance of the verdict. But the Judge refused to grant the request. The verdict was for $3,000.

To all the rulings against the positions taken by the defendant, &c., he filed exceptions.

*Blake*, for the defendant.

The depositions of Fuller and others ought not to have been admitted. The circumstances under which they were taken, as we offered to prove, show a gross attempt to overreach the law itself. To pretend that the law designs to give notice to attend, and then to practice a strategy by which such attendance is virtually prevented, illy becomes the administration of justice.

It has long been lamented that the deposition system has been systematically perverted, to the outraging of justice and truth. The hope was, that the practice under it would, by some rule of the Court, be corrected. Unhappily the decision in *Cooper* v. *Bakewell*, has but presented new encouragement to the tactics of distorting and perverting testimony. A just administration of law must rest upon the truth of testimony. If truth in testimony is to be sought, the rule in *Cooper* v. *Bakewell* requires a rescission. Its corrupting influences will prove unendurable. In this case, however, we rely upon grounds not in conflict with that part of that decision, which excludes parol evidence to control or explain the magistrate's certificate in the caption.

We offered *documentary* evidence, the original citation to defendant, and the officer's return upon it, showing of themselves that due notice had not been given.

The statute allows the party a given time, in which to go from his place to the place of caption. In this case not one moment was allowed us. The time of serving the notice and the time for taking the depositions were one and the same.

Besides, this flood of seven depositions, obtained in denial of our right to cross-examine, were taken on the day previous

to the sitting of the Court. This appears from their respective captions. We submit that, at so late a period in the vacation, we were not bound to attend.

The verdict was written, signed and sealed up on Sunday, and was therefore a nullity. The R. S., c. 160, § 26, prohibits any work, labor or business on that day, works of necessity and charity alone excepted.

Besides the statutory provision, that day, *by common law rules*, is *dies non juridicus.* The jury constitute a part of the Court; and they, as a jury, could do no lawful act on any part of that day. Nor is it sufficient, as a reply, to say that the verdict, though agreed upon on Sunday, was not delivered or affirmed on that day. *Clough* v. *Adams*, 9 N. H. 500, where it is held that a note, written on Sunday and handed to an agent to be delivered on Monday, is void. *Story* v. *Elliott*, 8 Cowen, 27; *Shaw* v. *McCoombs*, 2 Bay. 232.

It was our right to have permission given to the jury to retire again for consideration of their verdict. The proof was, that one of their number applied in the forenoon of Monday for such a permission; stating as a reason that the close of their action was hurried; that it was at about one o'clock on Sunday morning; that their room was cold; that they had been some thirteen hours confined without any refreshment; that they all were tired and some of them sick; and that several of them wished opportunity to consult further. On that request, the permission to the jury should have been granted, even without motion by the counsel, but especially was it the right of the party, on motion, to have that reasonable request granted.

The second count was bad on demurrer, for the cause specially assigned.

The mode of declaring generally, that the defendant imputed to the plaintiff the crime of adultery, is at variance from the ordinary course of pleadings, and can be sustained only on the most stringent authority, or extraordinary reasons.

In a criminal prosecution, such a mode of charging the of-

True *v.* Plumley.

fence would be clearly insufficient. Yet the rules in this respect are the same as in civil suits.

The principle upon which this second count is framed, so says WESTON, C. J., in *Brown* v. *Brown*, 14 Maine, 318, "has not been adopted by any judicial decision in this State." And I trust the Court will be slow to adopt it, with the light which experience and judicial discussion has thrown upon the subject elsewhere.

The *words* or the substance of the *words*, not the substance of the *charge*, should be alleged; that the Court may see whether they impute the crime charged; 1 Saund. 242, n. (a); 3 M. & S. 110; 6 Taunt. 169; and also that the defendant may know with certainty what he has to meet, both in his pleadings and proofs.

The *words* should be alleged, for the further reason, that the suit may be pleaded in bar to a second suit for the same cause.

The case of *Nye* v. *Otis*, 8 Mass. 122, rests on one authority only, and that a mere *dictum* of a single Judge, and that Judge only sanctioned the setting out of the substance of the *words* spoken, not the substance of the *charge* made.

And that authority, Lord ELLENBOROUGH, 78 years afterwards, characterises as "an opinion hastily thrown out at *Nisi Prius;* an *obiter dictum;* and evidently founded on a mistake in regard to the precedent in Rastell."

The case of *Whiting* v. *Smith,* 13 Pick. 364, on which the plaintiff may attempt to rely, is founded mostly on the enfeebled decision of *Nye* v. *Otis.* The reasonings from convenience, which the Judge so laboriously arrays, are in conflict with experience and good sense ; and, it is believed, do not give satisfaction to any legal mind. They make but a specious argument to maintain a questionable decision.

Greenleaf, in his forms for declaring in libel and slander, omits the general form, used in the second count of the declaration in this suit, thus evidently manifesting his disapproval of it.

The mode of declaring generally in slander has been ex-

pressly repudiated in several of the States. 2 Johns. 10; 12 S. & R. 427. These cases, conflicting with the decisions in Massachusetts, are overbalancing. So that, to say the least, there is no constraining weight of authority, to impel the Courts of Maine to encourage a course of pleading so much at variance from the ancient paths of the law, as is attempted in the count now under consideration.

The depositions of Samuel Whielden and Peter Whielden were wrongfully admitted. They stated words used by the defendant, but did not fix the time. The words may have been used, *after* the bringing of this suit, and, if so, being in themselves actionable, they may be the foundation of another suit, thus sustaining both this suit and a subsequent suit for the same cause. 7 C. & P. 112; 3 B. & C. 125. After suit brought for defamatory words, actionable in themselves, it is not competent, even with a view of showing malice, to prove that they were afterwards repeated. *Wilson* v. *Apple*, 3 Ham. 270; *Stuart* v. *Lovell*, 2 Stark. N. P. 93; *Root* v. *Lowndes*, 6 Hill, 519; *Kenholts* v. *Beeher*, 3 Denio, 348; *Watson* v. *Moore*, 2 Cush. 137.

The counsel then examined and commented elaborately upon the views of the Judge, as offered to the jury, in relation to damages; and especially objected that, in the charge to the jury, the Judge presented them no rule or principle by which to guide them in the assessment of damage.

*A. W. Paine*, for the plaintiffs.

APPLETON, J. — The numerous questions arising in this cause have been argued with great elaborateness and ability, and it will become necessary to examine them with care, as well on account of their intrinsic importance, as on that of the interests involved in their determination.

The depositions of Timothy Fuller and others were taken at 8 o'clock, on the Monday preceding the session of the Court to which they were returnable. The defendant offered to prove, that the notice to take them, was served on him at half past seven of the same morning, and that, when they

were to be taken according to the notice given, he was engaged in attending to the taking of another deposition, which had been commenced on the Saturday previous, but had not been finished. It was held in *Cooper* v. *Bakeman*, 33 Maine, 377, that the magistrate's certificate as to the notice, manner and cause of taking a deposition is conculsive proof of the facts certified and that parol evidence, to show that the time between the notice and the caption was less than that allowed by the statute, was inadmissible.

In *Wyman* v. *Wood*, 25 Maine, 436, the Court decided, that a deposition taken on the day preceding that on which the Court at which it was to be used was to commence its session, should not for that cause be excluded. If there was an impossibility to attend, or if there was any surprise in the testimony offered, it might, in certain cases, furnish a ground for a continuance. No request for delay or for a continuance seems to have been made, and according to the authorities cited, the depositions were properly received.

The cause was committed to the jury on Saturday, and they were permitted to seal up their verdict and separate after they had agreed. The evidence tends to show, that they were engaged in the consideration of the cause, and that they had not agreed upon their verdict, till after twelve o'clock at night. The verdict was rendered and affirmed on Monday. The counsel for the defendant move, that for this cause it should be set aside, and rely on *Shaw* v. *McCoombs*, 2 Bay. 232. This case, which is directly in point, was briefly argued by counsel, and the opinion of the Court was given without any examination of authorities or discussion of principles. It has been subsequently examined and may be considered as overruled. In *Harrington* v. *Osborn*, 15 Johns. 115, the Court say: — "It was proper to receive the verdict on Sunday, presuming the jury were impanneled before Sunday commenced, but it was illegal to render the judgment on Sunday." In *Hurdekoper* v. *Collin*, 3 Watts, 56, it was held not to be void that a verdict in a civil cause was rendered on Sunday, the cause having been commenced on the previous

day. In *Baxter* v. *The People,* 3 Gil. 368, which was an indictment for murder, the jury did not agree, and the verdict was not rendered until Sunday morning, and upon full consideration the Court recognized the distinction, that a verdict may be received that day, but that no judgment could be entered or sentence pronounced. "We think," says CATON, J., "the authorities clearly establish, that when a cause is submitted to the jury before twelve o'clock on Saturday night, the verdict of the jury may be received on Sunday ; but that it is not a judicial day for the purpose of rendering any judgment, and if it attempt to render a judgment, still in law it would be no judgment, but absolutely void, and will be so declared, and may be reversed by the Court."

On Monday afternoon, when the jury were directed to bring in their verdict, upon the inquiry being addressed by the clerk to the jury, whether they had agreed, and before their answer, the counsel for the defendant requested the Judge to say to the jury, that if any of them wished to retire again to consider the case further, that it was their right to do so, but this the Judge declined to do. The counsel for defendant then requested the Court to ask, or let them ask the jury, if any of them wished again to retire to consider the case, and these requests were renewed again after reading the verdict by the clerk and before the same was recorded, and in both instances they were refused by the Court, and, as we think, properly refused. The answer to the inquiry of the Court, and the verdict, as affirmed and recorded, was under oath. Any juryman might have dissented, had he deemed such to be his duty, before the affirmance of the verdict. *Ropps* v. *Barker & al.* 4 Pick. 242. After the jury had sealed up their verdict and had separated, the Court could not have sent them back to reconsider the verdict, without the assent of both parties, and had they so done, without such assent, it would have been good cause for setting it aside.

The second count contains a general allegation that the defendant had accused the plaintiff's wife of adultery. To this there was a demurrer and joinder in demurrer. An issue.

of law was thus raised, and if the demurrer was sustained, the plaintiffs could not recover on the count to which it related. If the count was adjudged good, all that would remain to be done, would be the assessment of damages. The demurrer admitted all facts well pleaded, and if they constituted a ground of action the plaintiffs' right to recover was conceded. The Court adjudged the declaration good, which left only the damages to be assessed. Instead, however, of relying on the question of law thus raised, and presenting it before the full Court for their decision, the defendant pleaded the general issue to the count demurred to, and the action proceeded to trial as if no demurrer had been filed. As this was done by mutual consent, and as the defendant has had the benefit of an issue of law, and subsequently of an issue of fact, he cannot be allowed to take advantage of this irregularity.

But as the propriety of this mode of declaring may frequently arise, and as it has been fully argued, it may be advisable to examine and determine now the question thus raised. This general mode of declaring in slander by setting forth the substance of the words spoken, though opposed to the decisions in England and in many of the States, is in conformity with the usual course of practice in Massachusetts as well as in this State. Before the separation, in *Nye* v. *Otis*, 8 Mass. 122, it was held that a general count in an action for defamation was good. In *Whiting* v. *Smith*, 13 Pick. 364, this mode of declaring received the consideration of the Court, and the previous decision of the Court, in *Nye* v. *Otis*, was reäffirmed. In *Allen* v. *Perkins*, 17 Pick. 369, the Court held that a general count setting forth that the defendant had charged the plaintiff with a crime, was good. In *Clark* v. *Munsell*, 6 Met. 373, it was decided that the Court might, at the instance of the defendant, require a specification of the plaintiff, of the words upon which he intended to rely to support his action. The judicious exercise of this power would seem to remove all fears of any difficulty, which might be anticipated as likely to arise from this general mode

of declaring. The defendant might have required the filing
by the plaintiff of the particular words by him spoken which
imported the charge of adultery, and unless they had been
furnished, the defendant would not have been compelled to
proceed to trial.

In an action for damages for words not actionable in them-
selves, the plaintiff, besides proof of the words, must show
the special injury resulting therefrom. When the words are
actionable, the law infers malice and that some damages have
ensued.

The words in the first and third counts in this case being
actionable and the law implying malice, the counsel for the
defendant object to the proof of other and different words,
spoken by the defendant, for the purpose of showing malice.

It seems to be well settled that the intention, the *quo animo*,
with which the words complained of were uttered, is an ele-
ment most material in relation to the question of damages.
To mitigate damages, the defendant may show that the words
spoken and for which a suit is brought, were uttered in a pas-
sion, or in sport ; in a state of intoxication, or under such cir-
cumstances as would tend most essentially to diminish their
injurious effect, or to rebut the malice inferrable from their ut-
terance. Sedgwick on Damages, 540.

The depositions of Samuel Whielden and Peter Whielden,
to the admission of which the counsel for the defendant ob-
jected, contain actionable words of the same character, and
asserting the same charge as those in the first and third counts,
and were received for the purpose of proving express malice.
The admission of evidence of this description, for this pur-
pose, has been the subject of much discussion. In England,
after much mutation of opinion, and after different rulings of
eminent Judges, it was finally determined that it might be
received to show malice on the part of the defendant, but
not to obtain damages for the subsequent injury. "This
appears to us to be the correct rule," says TINDAL, C. J.,
in *Pearson* v. *Lemaittre*, 5 Man. & Gran. 719, "that either
party may, with a view to the damages, give evidence to

prove or disprove the existence of a malicious motive in the mind of the publisher of the defamatory matter; but that, if the evidence given for that purpose establishes another cause of action, the jury should be cautioned against giving any damages in respect of it. And if such evidence be offered merely for the purpose of obtaining damages for such subsequent injury, it should be rejected." In *Bodwell* v. *Swan*, 3 Pick. 376, evidence of words spoken by the defendant after the commencement of the suit, of a similar import with those charged in the declaration, was held admissible for the purpose of proving malice.

In *Watson* v. *Moore*, 2 Cush. 134, the Court recognize with approbation the law as settled in *Bodwell* v. *Swan*, 3 Pick. 385, but limit its application to the repetition of the same slanders, or to those of a similar import. The same rule was adopted in this State, in *Smith* v. *Wyman*, 16 Maine, 13.

It has been decided, in *Campbell* v. *Brett*, 3 Coms. 173, that it was no defence to an action of slander, that the words sued for had been used in a former suit to prove malice. Hence, the importance of the qualification to the jury, that they should not increase the damages on account of words received merely to prove malice. For as damages are increased by proof of express malice, and as the tendency of a repetition of the same slander on the minds of a jury would be to show the intensity of the defendant's malice, and consequently to aggravate the damages, the jury should be forewarned against giving any such effect to this kind of evidence. This reason, among others, may have led the Court of New York to adopt the course of excluding all evidence of slanderous words other than those declared on, even for the purpose of proving malice. *Randall* v. *Buller*, 7 Barb. 260.

The objection, that it does not appear that the words in these depositions were uttered before the commencement of the plaintiffs' suit, cannot avail. They were not offered to sustain the declaration, but to show malice, and if to be ad-

mitted for that purpose, it would seem to be immaterial when they were spoken.

The words charged in the first count are, that "she," meaning the female plaintiff, "is a damned whore," and in the third count, that "she was a whore." The Court instructed the jury, that if they believed the testimony of Richard Libbey and Jonas C. Spooner, it was sufficient to maintain these counts. This instruction the counsel for the defendant claims to be erroneous.

The testimony of Libbey was, that the defendant said "Mrs. True was a bad woman, decidedly bad," that witness told him he thought B. had more regard to his own family than to take a bad woman there," to which defendant replied, "she is a damned whore or she would never ride with J. B.". These words, it is insisted, do not prove the first count. We think otherwise. The charge thus made, may, in the mind of the defendant, have been a just inference from the facts stated, but whether the inference is one, which any other person would have made or not, whether it be just or not, it equally exists. The assertion is none the less made, though the inference may have been entirely without foundation. How far these words, "she is a damned whore," may be considered as modified in their meaning by the subsequent words, was for the jury to consider. *Whiting* v. *Smith,* 13 Pick. 372.

The evidence of Spooner was, that "defendant expressed himself strongly that she was a bad woman, that she had dealings with other men besides her husband, and was not very particular who." In slander the words must be proved as alleged. It is not enough to prove equivalent words, nor are words to the same effect the same words. *Fox* v. *Vanderbeck,* 5 Cow. 515. The testimony of Spooner does not sustain either of the counts. The habit of prostitution for the sake of gain, the utter debasement implied in the words charged, is not proved to have been asserted of the female plaintiff by the speaking of these words. "Unless," says Lord ELLENBOROUGH, in *Cook* v. *Cox,* 3 M. & S. 116, "the very words are set out, by which the charge is conveyed, it is al-

most, if not entirely impossible to plead a recovery in one action in bar of a subsequent action for the same cause." According to the recognized rules of law, the testimony of Spooner would not sustain either the first or third count. The words being proved and malice being an inference of law, the question occurs, by what rules shall the jury be governed in assessing damages.

The Court instructed the jury that if the plaintiff did commit adultery, they would consider it as evidence, though not conclusive, and if adultery is proved it will go in mitigation of damages in the first and third counts, and the plaintiff cannot recover in the second count. Of the correctness of this instruction there can be no question. If the defendant had established incontrovertibly the fact of adultery, still it might have been only in a single instance. But proof of one offence would not sustain the charge of that long continuance in vice which is asserted by the words in the first and third counts. The solitary instance does not prove the general habit. If one lapse from virtue was proved, it would be a defence to the second count and would properly reduce damages on the others, and so the Court instructed the jury.

The Court further instructed the jury as to damages, in these words; "As to damages you will consider the pain and anguish occasioned by defendant's slander, the cost and trouble, the suffering occasioned by that slander, her prospects in life as affected thereby, the wealth and position of the defendant, and his power therefrom to injure, and give such damages as she is entitled to."

Different rules for determining the measure of damages to which a plaintiff may be entitled in actions of tort, have been laid down for the guidance of a jury, by different Judges, and advocated by different juridical writers. Damages are given as a compensation, recompense or satisfaction to the plaintiff for an injury actually received by him from the defendant. They should be precisely commensurate with the injury; neither more nor less; and this, whether it be to his person or his estate." 2 Greenl. on Ev. § 253. "The damages,"

says METCALF, J., in *Halson* v. *Moore*, 2 Cush. 140, "in an action of slander, are to be measured by the injury caused by the words spoken and not by the moral culpability of the speaker." In this class of cases the law "permits the jury to give what it terms punitory, vindictive or exemplary damages; in other words, it blends together the interests of society and of the aggrieved individual, and gives damages not only to recompense the sufferer, but to punish the offender." Sedgwick on Damages, 38. "In cases of personal injury," says GIBSON, J., in *Pastenus* v. *Fisher*, 1 Rawle, 27, "damages are given not to compensate, but to punish." "The jury may not only give," says WALWORTH, Ch., in *King* v. *Root*, 4 Wend. 113, "such damages as they think necessary to compensate the plaintiff for his actual injury, but they may also give damages by way of punishment to the defendants." The difference between the different rules above referred to is obvious. The jury should have been governed by that alone which is right. Whatever rule may be the true one, the plaintiffs are entitled to such damages as upon the evidence can be awarded in conformity therewith, and not to damages assessed upon other erroneous principles. Now no rule was given to the jury. Are they then to be a law unto themselves and freed from all legal restraints to assess damages at their own will and pleasure? The jury were directed to give the plaintiffs the damages to which they were entitled. To what are the plaintiffs entitled? The question unanswered recurs. To damages which are simply compensatory and to the full extent of any injury sustained? to those which would by way of example be sufficient to deter others? or to such as beside compensating, and deterring by example may impose a punishment on the defendant as for a crime? thus infusing into the civil proceedings the effect of a criminal procedure and erecting the jury into a tribunal which shall in each case impose the penalty. Either of these principles might have been adopted by the jury. Which in fact they did adopt, we know not and cannot know. As was remarked by ROGERS, J., in *Rose* v. *Story*, 1 Bacon, 190,

where somewhat similar instructions were given, "this is giving them discretionary powers without stint or limit, highly dangerous to the rights of the defendant. It is leaving them without any rule whatever."

Most of the various matters referred to in this instruction might be regarded as elements proper for the consideration of the jury, but still some rule should have been given to the jury, unless the law is that they are to determine the damages without any restraints, and in each case, according to their arbitrary discretion.

In actions brought to recover damages for an injury to the person or to the reputation, the injuries which may have arisen, as well as those likely to occur, must receive a compensation in one and the same suit if at all. The jury may regard the probable future as well as the actual past. In no other way can compensation be obtained. In *Gregory* v. *Williams*, 1. Car. & Ker. 568, the instructions given were, that in estimating damages, the jury might consider the prospective damages which might accrue from the defendant's act. "It is said," remarked BOSANQUET, J., in *Ingrane* v. *Lawson*, 8 Scott, 471, "that the damages sustained at the time of commencing the action, is all that the plaintiff could recover, and that the jury were erroneously directed that they might take into account the prospective injury. But it appears to me, that the jury were warranted in proportioning the damages to the amount of injury that would naturally result from the act of the defendant, though it might affect him at a subsequent period."

The counsel for the defendant requested the Court to instruct the jury that if they believed the defendant, in any thing he said, had no malice or intention to injure the plaintiffs, their verdict would be for the defendant. The Court declined to give this, but said to the jury it was not necessary defendant should have *any* malice against the plaintiffs, or intention to injure them, to maintain the suit; that, if defendant's malice was entirely towards another person, in slandering whom he uttered the slanderous words against the plaintiffs, the action was maintainable and the *damages would be*

*just as great* as if the malice of the defendant had been towards the plaintiffs. As if A threw a stone with malice, intending to kill B and killed C, against whom he had no malice, his guilt would be the same as if he had killed B.

Were this an indictment for murder, the instructions would have been less liable to exception. Malice, in its legal sense, means a wrongful act done intentionally, without just cause or excuse. *Commonwealth* v. *York*, 9 Met. 115. Doing a wrongful act, knowing it to be such, constitutes malice. So far as regards the maintenance of the suit, it is equally maintainable whether there be malice in fact or not. But in a civil cause, where the jury are to assess damages, nothing is more clearly established by an entire uniformity of decisions, than that damages in slander may be increased upon proof of malice in fact. The instruction of the Court amounts to this, that the same damages are to be given when malice in fact exists, as when it is only a legal inference from the speaking of the words. Now, such we do not consider to be the law. " Upon principle," says TINDAL, C. J., in *Pearson* v. *Lemaittre*, already cited, " we think that the *spirit and intention* of the party publishing a libel, are fit to be considered by a jury, in estimating the damages done to the plaintiff." In *King* v. *Root*, 4 Wend. 139, WALWORTH, C. J., says, " that the plaintiff is at liberty to give evidence of actual malice and vindictive motives on the part of the defendant to increase the damages." Hence, for the purpose of showing the intention with which the words constituting the cause of action were spoken, and increasing damages, the repetition of the same slanders is received. The intention being of importance in fixing damages, as they may be greater or less accordingly or not, as malice in fact concurs with malice in law. It is manifest that the damages must be less when this special ground of enhancing them does not exist than when it was the moving and inducing motive of action. " The malice," says BUCHANAN, C. J., " which the law implies, is of itself sufficient to support the action, but the damages to be commensurate with the offence, should be regulated by the *quo animo* with which the

words were spoken, for which the suit is brought." *Rigden* v. *Wolcott*, 6 Gill & Johnson, 418 ; *Wagner* v. *Holbunner*, 7 Gill, 300. If damages were made to depend merely upon the malice which the law implies, then one, who with honest intentions and with reasonable grounds of suspicion, should impeach the integrity of another, and one who should with malignant purpose utter slanders intentionally false, might be both properly mulcted in the same sum. The instruction that they should be *just as great* in one case as in the other, we cannot but deem erroneous, and we think that the presiding Judge in the pressure of a *nisi prius* trial did not sufficiently regard the distinction between malice in law and malice in fact, as affecting the damages to which the party injured would be entitled. A new trial must therefore be granted. *Verdict set aside, and new trial granted.*

SHEPLEY, C. J., and TENNEY, J., concurred. RICE, J., concurred in the result.