# Hopkins, Appellant, *v.* Tate.

*Libel and slander—Privileged publications—Candidacy for office —Proof—Reputation—Evidence.*

1. In the trial of an action for slander where the defense is that the publication was privileged because the plaintiff was a candidate for public office, the burden is on the defendant to establish this fact by competent evidence, and this cannot be done by showing a rumor of the candidacy or intended candidacy of the plaintiff published in a newspaper without his knowledge or authority.

2. In such case the fact that the plaintiff had not published a denial of the rumor is immaterial.

3. Character and reputation are not synonymous terms; the former is what a man is, the latter is what he is supposed to be. Character may be established or impeached by evidence of general reputation.

4. In an action to recover damages for injury to plaintiff's reputation, in consequence of the publication of a libel, the defendant may offer evidence of plaintiff's bad reputation in the neighborhood where the libel was published and at the time it was published in mitigation of damages, but evidence of plaintiff's bad reputation in

a neighborhood in which he lived eleven years prior to the publication is not admissible.

*Practice, Supreme Court—Assignments of error—Statement of question involved.*

5. Assignments of error not included in the statement of questions involved will not be considered by the Supreme Court.

6. It is not proper practice to assign as error the overruling of a reason for a new trial. The assignment should be to the action of the court on the trial to which an exception was taken.

7. Assignments to the admission of testimony are defective where answers to the questions propounded are not printed. Assignments of error stating counsel's reason why the rulings of the court are erroneous are improper.

Argued April 24, 1916. Appeal, No. 323, Jan. T., 1915, by plaintiff, from judgment of C. P. Erie Co., May T., 1914, No. 148, on verdict for defendant, in case of Daniel O. Hopkins v. Sell C. Tate. Before BROWN, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, J.J. Reversed.

Trespass for slander. Before WALLING, P. J.

The opinion of the Supreme Court states the facts.

Verdict for defendant and judgment thereon. Plaintiff appealed.

*Errors assigned* were rulings on evidence, instructions to the jury and answers to points.

*L. E. Torry,* for appellant.

*M. Levant Davis,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, July 1, 1916:

The defendant set forth in the notice of special matter which he proposed to offer in evidence on the trial of the cause under the plea of justification that it was rumored among the citizens of the township, where both parties resided, "that the plaintiff was a candidate for the Demo-

cratic nomination for member of the legislature from the
third district of the County of Erie, and in fact the said
plaintiff was a candidate for said office, and inquiry as
to his character, reputation, integrity and fitness for
said official position were matters of public concern,"
and that the alleged defamatory words were uttered in
reference to the plaintiff's candidacy for the office, and,
therefore, the language was privileged. The defendant
offered in evidence the issue of the Erie Daily Times of
Wednesday evening, November 5, 1913, which contained
the article included in the fourth assignment of error.
The article states, inter alia: "It was noised about in
political circles this (Wednesday) morning, that D. O.
Hopkins, of Mill Creek Township, who managed Hai-
bach's campaign for sheriff against the Liebel faction,
has announced his candidacy for county chairman of the
Democratic party. He also intends to make a fight for
the assembly, it was learned." This is the only reference
in the article to the plaintiff's candidacy for the assem-
bly. The article was admitted in evidence against the
objection of the plaintiff.

It will be observed that in the notice of special matter
to be given in evidence under the plea of justification, the
defendant proposed to show that the language uttered
by him was privileged because of the candidacy of the
plaintiff for the office of member of the legislature. The
learned judge admitted the article in evidence. We think
it was not competent, and should have been excluded.
Throughout his charge, he treated the evidence as offered
and admitted under the plea of justification to establish
the candidacy of the plaintiff for the office of member
of the legislature for the purpose of showing that the
words spoken were a privileged communication. The
article does not state the plaintiff was a candidate for
nomination for the assembly, and if the defendant read
it, as he says he did, it gave him no such information.
The article says that it was learned the plaintiff "in-
tends to" be a candidate for the assembly. This neces-

sarily meant at some future time, and as said by the court in its charge: "If he was not a candidate until April, it could be no excuse for making slanderous statements against him in November." The article was published in the evening issue of the Daily Times of November 5, 1913, the day after the November election of that year. The next regular election to nominate a candidate for the legislature was in May of the following year, and the general election for members of the legislature was in November of that year. It is true, as argued, the plaintiff may have been a candidate at the time the article was published, but it did not state the fact, and, therefore, did not furnish the defendant any ground or reason for believing that he was at that time a candidate for the office. The learned judge manifestly thought this was the meaning of the article as, in referring to it, he says that it states "he (plaintiff) was going to be a candidate for the assembly." The article, therefore, did not announce and was not evidence tending to prove that the plaintiff was then a candidate for the office, and hence did not make the alleged slanderous statement privileged matter under the notice of special matter given the plaintiff by the defendant.

We also think the Times article should have been excluded because there was no evidence that the plaintiff authorized the statement that he intended to be a candidate; on the contrary, he testified that at the time of the publication he was not, and had not announced as, a candidate for any office, and did not desire to be a candidate for the assembly. He said that he heard the article had been published in the Times, but did not consider he had to deny it. We cannot assent to the proposition that a communication, injurious to or affecting the reputation of a person, is privileged because he fails to deny an unauthorized rumor or statement of his candidacy for public office which is published in a newspaper. This would require a supervision of the newspapers at least throughout the whole territory in which the incumbent

of the office exercised his official functions and could not reasonably be expected. Such a precedent would be most dangerous to society as it would open wide the door to the slanderer or blackmailer and give him his desired opportunity, which would readily be embraced, to attack his victim with impunity and without any adequate redress. The reputation of the individual is too sacred for the law to afford any unnecessary protection to its assailants. As said in the charge, there is no presumption that the plaintiff was a candidate when the alleged slander was uttered and, being an affirmative defense, the burden was on the defendant to establish the fact. This cannot be done by showing a rumor of the candidacy or intended candidacy published in a newspaper without the knowledge or authority of the alleged candidate. The extract in question from the Times was not competent evidence, and should have been excluded.

We think the learned court erred in admitting in evidence testimony to show the plaintiff's bad reputation for honesty in another neighborhood and eleven years prior to the time when the alleged slanderous words were spoken by the defendant for which this action was brought. The court told the jury there was no evidence tending to show that the plaintiff's reputation for honesty was bad at the time or in the place where he lived when the slander was uttered. This distinguishes the case at bar from Parkhurst v. Ketchum, 87 Mass. 406, cited by the court and appellee to sustain the competency of the testimony, where it appeared that the plaintiff's reputation was bad at the date the words were spoken as well as ten years prior thereto. The court recognizes this distinction as material, if not controlling, in the opinion, where, in discussing the competency of such testimony, it is said: "Its effect would undoubtedly have been much lessened, if not entirely prevented, by proof when the words were spoken the woman's general reputation was good, though it was bad ten years before."

The present action was brought to recover for the injury to the plaintiff's reputation at the time the defamatory words were spoken. The question, therefore, is what his reputation for honesty was in that neighborhood at the time when it was assailed by the defendant. This is the time he alleges he sustained injury by reason of the utterance of the alleged slander by the defendant. If his reputation was bad at that time, it may be shown, under proper pleadings, in mitigation of damages. A man may, with or without his fault, have a bad reputation for honesty in the neighborhood in which he then resides, but removing therefrom he may, after living in another and distant place for several years and leading an honest and upright life, acquire a good reputation in the latter community. His character may not undergo a change, but his reputation in the two places is not the same. Character and reputation are not synonymous terms. The former is what a man is, the latter is what he is supposed to be, says Webster. Character may be established or impeached by evidence of general reputation. It is his reputation in the neighborhood in which he resides at the time the slander was uttered, and not in the neighborhood from which the party removed many years prior thereto, which has been attacked and injured. To the extent to which his reputation in the former community has been injured he is entitled to compensation, which may be diminished by proof of his bad reputation in the neighborhood.

We think our conclusion is sustained on principle by decisions in somewhat analagous cases. In Smith v. Hine, 179 Pa. 203, the character of a witness for veracity was attacked. In delivering the opinion, Mr. Justice FELL said (p. 206): "Generally when evidence of character is received as tending to establish the innocence of a person charged with crime the inquiry is limited to the time when, or prior to which, the alleged offense was committed, and the same limitation is observed in civil cases where the character of a party to the suit is an ele-

ment to be considered in estimating damages. The character of the accused prior to the charge of crime is often important in determining the question of guilt, and it may of itself be sufficient to create the reasonable doubt which should work an acquittal. When damages are claimed for injury to character, the value of the character alleged to have been injured may properly be considered. In these cases it is character at the time of the alleged offense, or character at the time of the alleged injury, that may be taken into consideration and that may be proved."

In Miller v. Miller, 187 Pa. 572, we held that a witness's credibility could not be attacked by evidence of his reputation at a period four years prior to the time he testified. In Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 185, an action for damages for the death of a miner, evidence that the deceased was a careless driver was held inadmissible where it did not refer to a time near the accident. In the opinion it is said: "It was not error to reject the offer of evidence embraced in the ninth assignment. The offer was vague in this, that it fixed no time during which it was proposed to inquire into the habits of deceased as to carelessness. For anything that appears in the offer it might have been ten years prior to his death." In Haag v. Cooley, 33 Kansas 387, an action for slander, it is said in the opinion: "It was what his general reputation for honesty and integrity was at the time the alleged slanderous words were spoken that was in issue, and the evidence should have been confined to that time."

What has been said disposes of the two questions stated by the appellant to be involved in the case, and the assignments of error raising these questions are sustained. The questions raised by the other assignments are not included in the statement of questions involved and, therefore, will not be considered: Willock v. Beaver Val. R. R. Co., 229 Pa. 526; Pramuk's Appeal, 250 Pa. 45. The greater number of the assignments of error are defective

in form.  In several of the assignments it is alleged that error was committed in overruling the reason for a new trial, instead of averring that the court erred in its ruling of the same question raised on the trial and to which an exception was taken.  In some of the assignments the answers to the questions admitted under objection are not printed, and, in other assignments, the counsel states his reason why the ruling of the court is erroneous.  These defects were not called to our attention by the appellee at the argument, or they would have laid sufficient grounds for quashing the assignments.

The judgment is reversed and a venire facias de novo is awarded.