Argued April 4; affirmed June 20; rehearing denied July 25, 1933

# MANNIX *v.* PORTLAND TELEGRAM
### (23 P. (2d) 138)

*John M. Pipes* and *John C. Veatch,* both of Portland
(Joseph, Haney & Veatch and John M. Pipes, all of
Portland, on the brief), for appellant.

*Frank J. Lonergan,* of Portland (Lonergan & Wag-
ner, of Portland, on the brief), for respondent.

BEAN, J. The complaint was amended before the trial so as to conform to the decision of this court on the former appeal, by alleging· plaintiff's good standing as a lawyer. Upon the trial, the defendant contended that it published the story as a news item and without malice. As held upon the former appeal, the publication set forth is libelous per se.

■ Soon after this action was commenced, on October 19, 1928, the deposition of Harry McDonald was taken before Judge Kanzler in his court room in Multnomah county. The deposition was not used upon the trial of the cause. On October 19 the defendant published an account of the taking of the deposition. This article was headed:

"KNIGHT REITERATES HIS CHARGES AGAINST MANNIX IN WARM COURT SESSION."

Next, in type larger than the type of the article, appears the following:

"Before Presiding Circuit Judge Kanzler, whose court room was crowded with prominent Portland attorneys and several circuit judges who sat as spectators, Harry Knight, alias McDonald, late Thursday reiterated charges which he made against Tom Mannix,

Portland attorney, two weeks ago in an interview given out in jail.''

The text of the article was of similar import to the publication of October 2, on which the complaint is based. The publication was received in evidence over defendant's objections and introduced as an exhibit. This ruling was assigned as error.

The defendant contends that the taking of the deposition was a judicial proceeding and that the report of such proceeding was privileged and that the article of October 19 was irrelevant. Plaintiff contended that it was relevant for the purpose of showing malice and was not privileged. This publication, which we will term the ''second publication'', was offered solely as bearing on the question of actual malice of the defendant in publishing the libel. The court instructed the jury that this publication could be considered only for such purpose.

█ Any proceeding wherein judicial action is invoked and taken is a judicial proceeding, a true report of which is qualifiedly privileged. 17 R. C. L. 346, § 93; Note, Ann. Cas. 1918-C, 1196.

█ In taking a deposition under our statute, which may be taken before a notary public or any officer authorized to administer an oath, no judicial action is invoked. Judge Kanzler, in taking the deposition, was, in effect, acting as a magistrate and not as a circuit judge. It is the law in this state that where the second publication is substantially the same as the libel sued upon, such publication is competent on the question of malice. *Upton v. Hume,* 24 Or. 420, 434 (33 P. 810, 21 L. R. A. 493, 41 Am. St. Rep. 863), where former Justice BEAN, in considering this question, employed the following language:

"The next assignment of error is in the admission, for the purpose of showing malice in fact, of proof that after the publication complained of, and before the commencement of this action, the defendant, in the presence of divers persons said, that 'the men that voted for that old forger Upton were thieves, robbers, and sons-of-bitches.' If these words can be considered as making any charge against the plaintiff, it is that of forgery, and, as no such charge is alleged in the complaint, the only question presented by the exception is whether in an action for libel, evidence of a charge of a different nature, and at a different time, from that alleged in the complaint, can be given for the purpose of showing malice, or the animus of the defendant in the publication complained of. Upon this question the authorities are in conflict, but in our opinion the better rule seems to be that where the subsequent words or publication impute the same crime, or may fairly be considered as a renewal of the original charge, they may be given in evidence as tending to show express malice, and to enhance the damages (Leonard v. Pope, 27 Mich. 145); * * *."

The publication of October 19, 1928, was not only a report of the taking of the deposition of Harry Knight, alias McDonald, but the article was embellished by headlines, as follows:

"KNIGHT REITERATES HIS CHARGES AGAINST MANNIX IN WARM COURT SESSION."

A "warm court session" is surely not an ordinary judicial proceeding.

The publication of October 19, 1928, ends with the following:

"ADDED ACCUSATIONS. Knight also accused Mannix of going to his, Knight's place of business and rifling his private papers. He said he had given Mannix money from time to time and that there were important receipts seized. He said the seizure occurred

after he, Knight, had been taken to jail as a fugitive from justice in Missouri.

Knight previously had accused Mannix of having turned him in to the authorities, after he had caused Knight's arrest on a charge of embezzlement of monies belonging to Neppach and had brought him into the bankruptcy court.

Following the dismissal of the indictment against Knight in Multnomah county, Sheriff M. M. Lane of Johnson county, Mo., who has been in Portland several days waiting to take Knight East, left last night with the prisoner for Kansas City.

Knight's deposition was taken at the request of The Telegram.''

■ In view of the manner in which the report was published and since it was not a regular court proceeding, we are constrained to hold that the article was not privileged and was admissible as tending to show malice on the part of defendant.

■ Defendant places its objection to the admission of the second publication on the ground that it was privileged. The statute provides that a deposition may be taken before any person authorized to administer an oath. Before a deposition becomes a part of a court proceeding the deposition should be transcribed and read to the witness, who may make necessary corrections therein. It should be signed by him; then it is sealed and transferred to the clerk of the court. Afterward it is subject to suppression upon motion. If neither party sees fit to introduce the deposition, it does not become a record in the case and may be excluded if it appears that the witness is available for oral examination in open court. See §§ 9-1701 to 9-1706, Oregon Code 1930. The plaintiff could not prevent the taking of the deposition before Judge Kanzler and was not instrumental

in that proceeding. The giving of extra publicity to the taking of such deposition might have a direct bearing on the question of the malice of the defendant and emphasize the first publication.

The question of whether the taking of a deposition is a proceeding in court was fairly considered by the federal court in *United States v. United Shoe Machinery Co. of N. J.*, 198 Fed. 870. In that opinion we find the following language on page 874 of the report:

"The impropriety of the publication pending the suit of depositions so taken is manifest from what we have already said. It is evident that upon ordinary principles of fair play the examiner's office should not be used as a vehicle for spreading statements which have not been subjected to judicial test.

\* \* \* \* \*

"That the public and press should be entitled to hear what is not yet evidence and what may never become evidence before the court which is to try the case hears it is an unprecedented and unreasonable proposition. The contention that judicial proceedings shall be held with open doors is not under dispute. The proposition that the taking of depositions by an examiner, who is merely a ministerial officer, is subject to the same rule, is in our opinion manifestly erroneous.

\* \* \* \* \*

"It asserts merely the right of the public to hear testimony. The public will have that right when testimony is offered. The public interests are fully preserved from the fact that the trial in the present case must be conducted with open doors."

■ The rule is well settled that the report of a court proceeding is only conditionally privileged. The law requires that the report should be fair and accurate and should be made with good and not with bad motives. 36 C. J. 1273 to 1276; *Sweet v. Post Pub. Co.* 215 Mass.

450 (102 N. E. 660, 47 L. R. A. (N. S.) 240, Ann. Cas. 1914D, 533).

As to judicial proceedings applicable to the case in hand, we find in Odgers on Libel and Slander, p. 191, the following:

"No action will lie for defamatory statements made in the court of a judicial proceeding before any Court of competent jurisdiction. * * * This immunity rests on obvious grounds of public policy and convenience. It attaches to all proceedings taken before any person who lawfully exercises judicial functions, whether he be technically a judge or not, provided he is acting in his judicial capacity and not merely in the discharge of some administrative duty." (Citing cases.)

We think Judge Kanzler, in the taking of the deposition in question, was acting in an administrative or ministerial capacity and not in a judicial capacity. A judicial officer may act in a ministerial capacity or a ministerial officer may exercise judicial functions. The duties are often blended. 34 C. J. 1179, § 3; 40 C. J. 1209, § 2.

Evidence may be given of antecedent or subsequent libels or slanders to show *quo animo* the words were published. Thus, such evidence is admissible to show that a communication prima facie privileged was made maliciously, and whenever a subsequent libel has reference to the one sued on it will be admitted as a necessary part of the *res gestae.* Odgers on Libel and Slander, p. 320, (citing *Finnerty v. Tipper,* 2 Camp. 72; *May v. Brown,* 3 B. & C. 113).

The publication of October 19, 1928, refers to the first publication by the use of the following language:

"* * * The Telegram against which Mr. Mannix filed a damage suit after the interview that involved Mannix appeared, quoted from the original in-

terview the portion which intimated that Mannix had made a proposition to Knight which the latter had turned down, in which Knight charged Mannix had proposed to him a scheme to get the fortune of Tony Neppach, a client of Mannix'.''

As a general rule, a full, fair and correct account of a trial in a court of justice is a privileged publication; but the privilege is confined strictly to a report of the actual proceedings in court, and must contain nothing in addition to what forms strictly and properly the legal proceedings. Newell, Slander and Libel (4th Ed.) 489, § 451; *Stanley v. Webb,* 4 Sandf. (N. Y.) 21; *Edsall v. Brooks,* 17 Abb. Pr. (N. Y.) 221 (26 How. Pr. 426, 25 N. Y. Super. Ct. 29). Mr. Newell says:

"It is necessary to the ends of justice that a party should be allowed to make his charges against another for adjudication, even though they may be of a libelous nature, and as such they are privileged, the injured party having a remedy for malicious prosecution when they are made maliciously or without probable cause. But the right of a party to make charges gives no right to others to spread them. When the charges come up for adjudication, however, although their publication may be as harmful and distressing to the person accused as if they had been published before their consideration by a court, a different rule applies. Individual feelings are no longer considered, * * *.'' Newell, Slander and Libel (4th Ed.) p. 488, § 450.

In *Davis v. Starrett,* 97 Me. 568 (55 Atl. 516), we find the following language:

"* * * And as bearing upon the question of actual malice it is competent for the plaintiff to show that the defendant has repeated the slander charged, or has used the same or similar words, upon other occasions. Smith v. Wyman, 16 Me. 13; True v. Plumley, supra [36 Me. 466]; Conant v. Leslie, 85 Me. 257, 27 Atl. 147. Such other communications, whether claimed to be priv-

ileged or not, are admissible, but solely for the purpose of showing actual malice in the slander sued for—to show the state of mind, the purpose and intention, of the slanderer.''

In *Shiell v. Metropolis Co.,* 102 Fla. 794 (136 So. 537, 543), the court said:

''The publication of an article may be in such a manner and under such circumstances as to show a reckless disregard of the rights of the plaintiff and of the consequences to the plaintiff as to authorize a jury to infer and find the existence of malice where such 'reckless disregard and want of care would amount to gross negligence. Houston Chronicle Publishing Co. v. Quinn, (Tex. Civ. App.) 184 S. W. 669.''

■ In an action for libel the defendant may allege both the truth of the matter charged as defamatory and any mitigating circumstances to reduce the amount of damages. The defendant did not plead justification. Section 1-809, Oregon Code 1930.

■ By assignments of error numbered 2 and 3, it is claimed that the court erred in sustaining an objection to defendant's offer in evidence of the opinion of the Supreme Court in the case of *State v. Mannix,* 133 Or. 329 (288 P. 507, 290 P. 745), and in sustaining an objection to the inquiry of Mannix, as a witness, if it was not a fact that one of the grounds of disbarment was the betrayal of the confidence of the court. The offer was made as affecting the damages and also the credibility of the witness. The complaint claimed damages for loss of business as a lawyer, from the date of the publication of the article sued on, namely October 2, 1928, to some indefinite time. For about a year of this period Mannix was disbarred by the Supreme Court from the practice of law. The court properly instructed the jury that the plaintiff could not recover for loss of business during this time.

The record of this court shows that on May 27, 1930, Thomas Mannix was disbarred from further practice of law in all the courts of this state for unprofessional conduct. The record of the judgment shows that the matter was referred to three circuit judges, as referees, to report the testimony and to make findings of fact and recommendations to this court. The referees thereafter filed with this court their findings and conclusions to the effect that these charges were sustained by the proof. Thereafter upon the hearing of objections and arguments of counsel the court found "that the conclusions and report of the referees that the charges are sustained by the proof are correct, and said findings are hereby confirmed". Rehearing was denied September 4, 1930.

Upon the trial of the present case the plaintiff admitted that he had been disbarred, and, such admission having been made, objection was made to the introduction of the opinion of the court. Our statute, section 9-615, Oregon Code 1930, provides that a judicial record of this state or the United States may be proved by the production of the original or by a copy thereof, certified by the clerk or other person having the legal custody thereof, with the seal of the court affixed thereto, if there be a seal. The original record of the disbarment was not offered in evidence; neither was the report of the referees containing the findings of fact in regard thereto.

"According to the general rule, in the absence of a statute or rule of court to the contrary, the opinion of a court is no part of the record on appeal, and the appellate court cannot look into the opinion to supply or explain matters which are required to be shown by the record, even though it is incorporated in the record, transcript, abstract, or bill of exceptions, * * *." 4 C. J. 102, § 1708.

Had the defendant desired to prove the judgment of disbarment in addition to the admission of the plaintiff, we think the proof should have been made in accordance with the statute. This is in conformity to the general rule as "A judgment and the proceedings in the cause in which it has been rendered properly are proved by the record itself or by certified copy". 10 R. C. L. 1121, § 329. "When a copy of a record is offered in evidence it must contain the whole record; a copy of a part only is inadmissible as a rule." 10 R. C. L. 1124, § 331. Citing *Frazier v. Steenrod,* 7 Iowa 339 (71 Am. Dec. 447) ; *Kenyon v. Baker,* 16 Mich. 373 (97 Am. Dec. 158) ; *Clark v. Depew,* 25 Pa. St. 509 (64 Am. Dec. 717), and other cases.

Referring to section 2-1604, Oregon Code 1930, as to the judgment roll, it will be noticed that the opinion of the court is not a part of the judgment roll. The findings of the referees, upon which the judgment of disbarment was based and which findings were confirmed by the court, constitute a part of the record in the case and were available to defendant, had it desired an amplification of the record.

15. On March 2, 1931, Thomas Mannix was reinstated and a copy of the judgment was introduced in evidence by the defendant to show that the reinstatement was on probation. It is urged by defendant that the disbarment proceeding would have an effect on plaintiff's business after he was admitted on probation. The main thing was that the plaintiff was disbarred. This quite likely affected his business after his reinstatement; as to how much his business was affected would be a question for the jury.

Evidently every one participating in the trial of this case knew when the opinion of the court was offered

in evidence that it would open up a broad field. The disbarment proceedings involved a long line of litigation and would detract the attention of the jury from the issues in the case in considering and construing the opinion of the court. If such a departure from the issues had been permitted, it is possible that a return thereto would have been greatly delayed. The opinion was also offered for the purpose of fixing the date of disbarment, but that matter was settled by the trial court and practically agreed upon.

It has often been held that subsequent matters cannot be proven for the purpose of affecting plaintiff's damages. The application of this rule has been invoked as to the publication of the same libel and other libels against the plaintiff and to offer of proof that other libel suits have been commenced and even that there has been recovery of some of them. 37 C. J. 93, § 521; *Folwell v. Providence Journal Co.*, 19 R. I. 551 (37 Atl. 6, 8) ; *Fay v. Brockway Co.*, 176 App. Div. 255 (162 N. Y. S. 1030). From the opinion in *Smith v. Sun Printing & Publishing Ass'n,* 55 Fed. 240, 245, we read:

"Defendant further contends that the court erred in excluding testimony as to other suits having been brought against other newspapers. This objection is unsound. Such evidence was wholly irrelevant and immaterial. It was not even suggested that any other suit was ever brought against any one for the libel counted upon in the action at bar. That other newspapers, which published similar libels, had been prosecuted by the plaintiff for their acts, was a matter with which neither court nor jury had any concern."

See also *Bennett v. Salisbury,* 78 Fed. 769, 774; *Hayes v. Press Co.,* 127 Pa. 642 (18 Atl. 331, 5 L. R. A. 643, 14 Am. St. Rep. 874).

As to introducing the disbarment proceedings for the purpose of affecting the credibility of the witness, it has been held that when the witness admits the fact of conviction it is not error for the court to exclude the record of conviction. *Long v. State,* 23 Neb. 33 (36 N. W. 310, 312); *State v. Egan,* 44 S. D. 273 (183 N. W. 652). The authorities quite plainly indicate that a party cannot go beyond the fact of disbarment and seek to establish the ground thereof for the purpose of affecting the credibility of the witness. *People v. Dorthy,* 50 App. Div. 44 (63 N. Y. S. 592); *People v. Dorthy,* 20 App. Div. 308 (46 N. Y. S. 970); 40 Cyc. 2610-2612, and cases there cited. In *People v. Dorthy,* 156 N. Y. 236 (50 N. E. 800), the court said:

"The exceptions taken by the defendant's counsel to the numerous questions put to the defendant when under cross-examination as a witness in his own behalf, tending to show that he had been removed from his office as an attorney of the court, stand upon a somewhat different ground. For all the purposes of the questions we will assume that the district attorney could ask him whether he had been so removed or disbarred. It clearly appeared from his answers and otherwise that he had been so removed or disbarred. That was as far as the prosecution was entitled to go. The presumption was that the order of removal made by the court was based upon charges and proof in all respects sufficient."

In *State v. Egan,* supra, the defendant took the stand and testified he had been twice disbarred by the Supreme Court and so admitted in his opening statement to the jury. The state sought to prove on cross-examination some fact on which the disbarments were based. It was held that the trial court erroneously admitted the court's opinion in the disbarment proceed-

ings showing disbarment. The court said, as recorded at page 278:

"Conceding, but not deciding, that the fact that defendant had been disbarred, like the fact that a person has been convicted of a heinous offense, might be material as tending to impeach his credibility, yet the admission of such fact by defendant was all-sufficient proof thereof. The purpose of cross-examination is to test the truth of the direct examination. 17 C. J. 385. There is no pretense that these records would tend to disprove defendants admissions, and defendant's admissions made upon his direct examination were of the same probative value to impeach his other testimony as though the fact of disbarment had been first shown on cross-examination. It follows that the objections interposed should have been sustained.

\* \* \* \* \*

"The state contends that defendant opened the door for this evidence by his opening statement and voluntary admissions. The state is in error — defendant merely rendered further proof of these disbarments absolutely immaterial."

This case is in principle on all fours with the case at bar. It was therein pointed out, in referring to the case of *Lansing v. Mich. Cent. Ry. Co.*, 143 Mich. 48 (106 N. W. 692), the difference between findings as to a criminal act and an opinion of a court. The court, without expressing any views as to the correctness of that decision, said "we need only suggest that findings as to criminal acts are far different than an opinion of a court, even though such opinion is based on the findings of such acts". In *Lansing v. Mich. Cent. Ry. Co.*, supra, there was an attempt to show the grounds of disbarment by means of the findings of the court disbarring the attorney. According to that authority the findings of the referees, when confirmed by

the court, would correspond to the findings introduced in the Lansing case.

 We find no authority for holding that when the fact of conviction of a crime is offered for the purpose of affecting the credibility of the witness the party can go any further and introduce the opinion of the court or any other part of the proceedings to show the grounds of conviction. The limit of the rule is that it can be established by the judgment of the court that the witness has been convicted of a certain crime when the fact of conviction is not admitted. Section 9-1911, Oregon Code 1930; 40 Cyc. 2640, 2641. The rule is quite generally recognized that the only competent evidence bearing on that question is evidence of general reputation. 1 Wigmore on Evidence, 145, § 70; 37 C. J. 76; *State v. Motley*, 127 Or. 415 (272 P. 651); *Hopkins v. Tate*, 255 Pa. 56 (99 Atl. 210); *Krulic v. Petcoff*, 122 Minn. 517 (142 N. W. 897, Ann. Cas. 1914D, 1056). Specific acts cannot be shown in evidence upon the question of the party's reputation. Competent evidence as to reputation of plaintiff should relate to the time of publication of the libel and before. *Earley v. Winn*, 129 Wis. 291 (109 N. W. 633); *Haag v. Cooley*, 33 Kan. 387 (6 P. 585).

The opinion of the Supreme Court had not been published and the disbarment proceedings were not instituted until after the plaintiff had recovered a verdict of $35,000 upon the first trial.

In *State v. Newlin*, 84 Or. 323, 326 (165 P. 225), the defendant had testified that there had been but one conviction, and in rebuttal the state was permitted to prove that there had been five. The court said:

"We can see no good reason for the contention that it was error to admit evidence of more than one con-

viction. If the fact that a witness has been convicted of one criminal offense has a tendency to discredit his testimony, we may fairly infer that several convictions would simply add to the effect of such inference.''

We do not consider that case as authority for admitting record evidence of the conviction of a crime when such conviction is admitted.

We think that the order overruling the motion for a new trial raises no questions other than those occurring upon the hearing of the case.

The questions involved in this case are mainly those of facts. The case has been tried twice, before two different juries, resulting in two verdicts in favor of plaintiff, under the supervision and direction of two very competent and learned circuit judges. No criticisms are made of the charge of the court to the jury. The case has been once before presented to this court. We think the case was fairly and impartially tried upon the second trial in the light of the opinion of this court upon the former appeal.

After careful consideration of the questions presented and of points which we have not detailed in this memorandum, we find no reversible error. It follows that the judgment should be affirmed. It is so ordered.

RAND, C. J., and BAILEY, J., not sitting.

ROSSMAN, J., dissenting.